**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANTONIO TILLMAN,**

      **Plaintiff,**

**-vs-**     Case No.  6:12-cv-969-Orl-22DAB

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

# Memorandum Opinion & Order

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## I.     BACKGROUND

### A.     Procedural History

Plaintiff filed for SSI benefits on January 3, 2007, alleging an onset of disability on November 6, 2006, due to a cerebrovascular accident.  R. 80-81, 189-93.  His application was denied initially and upon reconsideration.  R. 83-88.  Plaintiff requested a hearing, which was held on July 1, 2010, before Administrative Law Judge Angela Miranda (hereinafter referred to as "ALJ").  R. 16-57.  In a decision dated August 24, 2010, the ALJ found Plaintiff not disabled as defined under the Act

through the date of his decision. R. 63-78. Plaintiff filed a Request for Review of the ALJ's decision[1], which the Appeals Council denied on April 26, 2012. R. 1-4. Plaintiff filed this action for judicial review on June 26, 2012. Doc. 1.

### B.     Medical History and Findings Summary

Plaintiff was born on March 16, 1968, and he was 42 years old, and had a 10th grade education at the time of his hearing before the ALJ. R. 63, 189, 198. He had worked in the past as a day laborer, dishwasher, and sod layer. R. 194.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff alleged that he was disabled due to a stroke and fractured elbows. R. 193. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from status post cerebrovascular accident (CVA) with residual left-sided weakness, hypertension, drug abuse, pancreatitis and obesity, which were "severe" medically determinable impairments, but were not enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 68-70. The ALJ also found the combination of Plaintiff's status post CVA with his drug abuse caused limitations in his cognitive abilities. R. 69.

The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, except that Plaintiff had the capacity to frequently balance, occasionally stoop, crouch, climb stairs and ramps and to less than occasionally kneel and crawl due to his right-sided weakness. R. 70. The ALJ found Plaintiff had the capacity to understand, remember, and carry out simple, routine tasks. R. 70-73. The ALJ determined Plaintiff had no past relevant work. R. 73. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the

---

[1]Although the request for review was untimely, the Appeals Council determined that Plaintiff had good cause for his late request and allowed it. R. 1-3, 58-62.

vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a call out operator, charge account clerk, or surveillance monitor. R. 73-74. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time since January 3, 2007 through the date of the decision. R. 74.

Plaintiff now asserts two points of error which the Court will address collectively. He argues that the ALJ erred by finding he had the RFC to perform sedentary work contrary to the opinions of his treating physician and two examining physicians. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.     STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

**RFC and the treating physician's and hospitalists' opinions**

Plaintiff claims that the ALJ should not have found him able to perform sedentary work in light of the opinion of limitations assigned by his treating physician, Dr. Byerly, and two hospitalists, Drs. Subhani, and Ullah, which would preclude the performance of sedentary work. The Commissioner argues that substantial evidence supports the ALJ's decision that Plaintiff could perform other work in the economy.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*,

125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). As a general rule, a treating physician's opinion is normally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The ALJ must "state with particularity the weight she gave different medical opinions and the reasons therefore." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1986) (requiring the ALJ to

articulate his reasons for "giving no weight to the diagnoses accompanying the test results."). The Eleventh Circuit has clarified the standard the Commissioner is required to utilize when considering medical opinion evidence. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178–79 (11th Cir. Jan.24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz*, 825 F.2d at 279. The Eleventh Circuit stated that " '[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178–79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

Plaintiff first argues that the ALJ erred in not according proper weight under *Winschel* to the opinions of the two hospitalists, Drs. Subhani and Ullah. *See*, *e.g.,* R. 238 (signature line: "Noman M. Subhani, MD, Hospitalist"). Dr. Subhani opined that Plaintiff was "disabled" on a Florida Hospital form completed at the time he had the stroke in December 2006. R. 236. Unlike those found on the typical SSA RFC forms, this form did not have any functional limitation categories. The day after Plaintiff was admitted with a stroke, December 25, 2006, Dr. Ullah opined that Plaintiff would need marked rehabilitation for a prolonged period tome time and further studies. Notably, these hospitalists saw Plaintiff only at the hospital on no more than three occasions (R. 237-38, 344-51, 405-06) when he was admitted to the hospital; there was no ongoing treatment relationship, nor did doctors set forth any specific set of limitations in support of the assertions.

Plaintiff also argues that the ALJ erred by not fully crediting the opinion of Plaintiff's treating physician, Dr. Byerly of the Osceola Health Department, who opined that Plaintiff was "permanently

disabled" from hypertension, status-post-CVA, with left hemi paresis and sleep apnea" and "[b]ecause of his medical problems he was unable to work." R. 370.

On April 3, 2010, Dr. Byerly completed a medical source statement on behalf of the Plaintiff (R. 391) indicating Plaintiff "is s/p CVA with Left hemiparesis, hypertension and multiple medical problems. He is presently disabled because of this." R. 391. Dr. Byerly also completed a RFC Assessment Form. Dr. Byerly indicated the Plaintiff could sit/stand or walk less than 1 hour in an 8 hour work day; needed an assistive device to walk or stand; could occasionally lift up to 10 lbs but never more than 11 pounds; would need complete freedom to rest frequently throughout the day; and would need to lie down or sit on a recliner for a substantial period of time during the day. R. 392-94. Dr. Byerly also indicated the prognosis for Plaintiff was permanent. R. 394.

Plaintiff argues that the ALJ erred in failing to address all of the objective evidence which supports Dr. Byerly's December 2007 opinion, including the results of the testing conducted when Plaintiff had his stroke in December 2006 – the CT of the brain (R. 308), the MRI of the cervical spine (R. 304), the MRI of the brain (R. 302-03). Plaintiff contends that the ALJ erred in failing to address *all* of the December 2006 testing immediately following Plaintiff's hospital admission for stroke. Although the ALJ mentioned the MRI of the brain in the decision, Plaintiff argues that she erred in not specifically addressing the CT of the brain and the MRI of the cervical spine. Plaintiff also argues that the ALJ erred in failing to address the findings of the hospitalists concerning Plaintiff's condition, which supported Dr. Byerly's opinion.

While the ALJ did not specifically mention the opinions of the two individual hospitalists, the ALJ did discuss the hospital treatment notes from Plaintiff's admissions related to his stroke in December 2006. R. 71-72. On December 24, 2006, Plaintiff was admitted to Florida Hospital and underwent an MRI of the brain and a CT of the brain, which showed acute right anterior inferior pons infarct and multiple supratentorial white matter lesions in conjunction with a lesion within the corpus

callosum body and deep white matter focal hypodensity in the high right parietal region extending from the centrum semiovale to the occipital horn as described above with additional deep white matter subcortical hypodensity on the left, also, periventricular.  R. 306, 308.  At that time, Dr. Subhani, the hospitalist at Florida Hospital responsible for treating Plaintiff checked off on a Florida Hospital form that "based on [Plaintiff's] diagnosis, this person will not be able to work for the following time period . . . [for] twelve months or more (The patient is disabled.)" with a diagnosis of "cerebral infarct."  R. 236.

The following day, on December 25, 2006, another hospitalist specializing in neurology, Dr. Saif Ullah, a consulting physician, saw Plaintiff only once for a consultation after his stroke.  R. 242-44.  Plaintiff stated he woke up with weakness on the left side of the body, difficulty with speech; Plaintiff's urine showed cocaine.  R. 242.  Diagnostic studies of Plaintiff's MRI scan of his brain revealed multiple bilateral chronic changes and acute pontine infarct. R. 243. Dr. Ullah diagnosed Plaintiff with an acute stroke. R. 243. Dr. Ullah opined that Plaintiff was markedly disabled with speech and motor functions and was unable to walk "at present."  R. 243. Dr. Ullah opined that Plaintiff required additional testing, *i.e.*, MRI of the cervical spine, an echocardiogram, and blood tests, and he was "currently severely disabled from stroke and unable to function independently"; Dr. Ullah consulted social services to find a possible rehab place.  R. 244.

On December 28, 2006, Plaintiff underwent an MRI of the brain without contrast which showed extensive white matter lesions throughout the cerebral white matter, stable, most likely reflective of a small vessel ischemic process and findings again consistent with a recent right sided hemi pontomedullary infarct. R. 302-03. On December 29, 2006, Dr. Subhani diagnosed Plaintiff with infarct involving the right hemi pontomedullary area; small vessel ischemic changes; hypertension; and cocaine abuse. R. 237. After the stroke and several days in the hospital, Dr. Subhani discharged Plaintiff home in stable condition with instructions to follow up with a primary

care physician and with neurology; he was ambulating with a cane and physical therapy had been arranged. R. 237-38.

In late October 2007, Plaintiff returned to Florida Hospital complaining of shortness of breath. R. 341-69. Plaintiff stated he was still using cocaine, the last time was two weeks previously. R. 345. Plaintiff was non-compliant with medications and a fresh prescription was given and Plaintiff was cleared for discharge to his home. R. 345. Dr. Subhani was again the attending physician who diagnosed Plaintiff as having uncontrolled hypertension; chest pain; shortness of breath; smoker; noncompliance; drug abuse; and history of cerebrovascular accident. R. 344-45. Plaintiff's physical examination was normal, with the exception of left-side weakness, and Plaintiff's blood pressure was described as well controlled during the hospitalization. R. 348-49. Plaintiff tested positive for tetrahydrocannabinol (THC) (R. 347) and Dr. Subhani noted that Plaintiff was noncompliant with medications. In July 2009, Plaintiff was again hospitalized and Dr. Subhani diagnosed him with pancreatitis after testing; he was discharged home in stable condition and was ambulatory R. 405-06.

The Commissioner argues that although Plaintiff was unable to walk immediately after his acute stroke in December 2006, which the ALJ recognized (R. 71), he was ambulating with a quad cane four days later when discharged (R. 238). As noted by the ALJ, when Plaintiff underwent a consultative examination three months after his hospitalization in March 2007 with Dr. Singh, he could ambulate without the cane. R. 71, 329.

The hospitalists' opinions of Plaintiff's impairments that Plaintiff was unable to function independently or that was disabled immediately after Plaintiff's admission to the hospital following his stroke in December 2006 provided no information about the limitations of Plaintiff's impairments *after* his recovery. Another physician, Dr. Laddu, noted that Plaintiff had previously been discharged from the practice, but treated him because the practice was on emergency department call and the doctor was obligated to see him for cardiac evaluation. R. 239. Hospital notes also reflect that

-9-

Plaintiff had been in Florida Hospital in "the past multiple times" and he "does smoke, and take cocaine orally" contrary to other reports in the records. R. 242.  He reported to SSA staff in January 2007 (about a month after the stroke) that he was not seeing any doctors or receiving therapy. R. 325.

The ALJ quoted at length the functional limitations of the consultative examination performed on March 29, 2007, by Dr. Shanti Singh. R. 328-33.  Dr. Singh noted Plaintiff was found to be abusing cocaine and marijuana at the time. R. 328. Dr. Singh noted the Plaintiff walked with a slight limp on the left and using a cane for stability. R. 330. Plaintiff was diagnosed with status post acute pontine cerebrovascular accident; hypertension and hyperlipidemia. R. 330.  As the ALJ noted in describing the results of the consultative examination, Plaintiff reported that when "he was discharged from the hospital he was issued a quad cane, but can ambulate without it" and Plaintiff "walked with a cane but was able to walk slowly without it." R. 71.  The ALJ also noted that Dr. Singh described Plaintiff's speech as "slightly slurred" and with "very slight" facial asymmetry. R. 71.  On the right side, Plaintiff had full range of motion and 5/5 muscle strength but on the left, as the ALJ noted, Plaintiff's upper extremity strength was reduced to 2/5 and his fine manipulation skills were reduced and his motor power on in his left leg was 4/5. R. 71. He had "slightly" decreased sensation to light touch on the left side, however the right side was normal. Evaluation of the claimant's joints was normal. He walked with a "slight limp on the left" and used a cane for stability, but Dr. Singh noted that, otherwise Plaintiff had full range of motion. R. 71.

The ALJ did discuss the Florida Hospital notes from Plaintiff's admission and diagnosis of stroke, even if she did not specifically mention the specific opinions of the hospitalists, Dr. Subhani or Dr. Ullah, by name. The ALJ also based the RFC on the opinion of the examining physician Dr. Singh (*see* R. 73), who performed the consultative examination just three months after Plaintiff's stroke, and specifically noted that he had formed his opinion after reviewing the hospital records:

-10-

> In reviewing medical records from the hospital, he apparently presented to Florida Hospital Orlando. He walked into the emergency department complaining of the inability to walk properly and some trouble with his gait. He also complained of left side burning. He was subsequently admitted and further workup showed that he had suffered an occult stroke. He underwent an MRI scan of the brain which showed multiple bilateral chronic changes and acute pontine infarction. He had an MRI of the neck: which showed no significant stenosis. Of note, he was found to be abusing cocaine and marijuana at the time. He subsequently saw a neurologist [Dr. Ullah], was stabilized during his admission, did have some physical therapy while hospitalized. His admission was uncomplicated. He did well while hospitalized. He was admitted 12/24/2006, was discharged 12/29/2006. Of note, his workup for a source of his stroke was negative. There was no evidence of significant stenosis. He had a transesophageal echocardiogram done that was normal, did not show any cardiac thrombolic phenomenon. Coagulation studies are also normal. . . . He was discharged to follow up with neurology and his primary care doctor. A quad cane was arranged. Since discharge he has not had any physical therapy due to lack of insurance. He continued to improve to the point that he is ambulating even without a cane. His past medical history was unremarkable with the exception of morbid obesity and hypertension and of course his illicit drug use. He was well known to Florida Hospital Or1ando, having had multiple admissions.

R. 328.  In addition, SSA staff notes also indicate that Plaintiff reported to SSA staff that he had stopped using his cane by late 2007.  R. 215.

The ALJ's failure to specifically discuss the opinions of the hospitalists made in the day or two after Plaintiff was admitted to Florida Hospital with a stroke was not error.  The ALJ's reliance on the results of Dr. Singh's consultation examination of Plaintiff, which discussed at length the hospital records, and the ALJ's reliance on Dr. Singh's opinion of Plaintiff's functional limitations was based on substantial evidence.

The ALJ gave "limited weight" to Dr. Byerly's opinion that Plaintiff was disabled and found that her conclusion was not supported by her own treatment notes or the treatment notes of other sources:

> As for opinion evidence, the claimant's treating physician, K. Byerly, M.D., has indicated that the claimant's condition is disabling. With regard to the claimant's work related abilities, she opined that the claimant can sit, stand or walk for less than one hour a day and requires a cane for ambulation.  Dr. Byerly stated that the claimant must alternate positions frequently and cannot stoop. Dr. Byerly found that the claimant is unable to perform repetitive movements, push, pull or perform fine

-11-

>     manipulative with his left side, however he has no restriction with his right side. She
>     stated that the claimant can lift up to ten pounds occasionally and requires freedom to
>     rest frequently throughout the day. I give Dr. Byerly's opinion *limited weight* and find
>     that her conclusion is not supported by her own treatment notes, or treatment notes of
>     other sources. It is also not consistent with the claimant's own statements about his
>     activities.

R. 72 (emphasis added).

The Commissioner argues that Dr. Byerly's opinions would not be entitled to controlling weight because, although Plaintiff and the ALJ describe Dr. Byerly as Plaintiff's treating physician, Dr. Byerly appears to have treated Plaintiff in her office on only three occasions in four years, in December 2007, February 2008, and April 2010. R. 375, 377, 432-33. Dr. Byerly's notes regarding these visits are largely illegible; however, Plaintiff appears to have been complaining of pain in his right leg, trouble sleeping, and dry mouth at his December 2007 visit, cold/flu symptoms at the February 2008 appointment, and dizziness/leg numbness at his April 2010 follow-up appointment (Tr. 375, 377, 432). At the time of the April 2010 visit, Dr. Byerly had not treated Plaintiff for more than two years.

The Commissioner also argues that ALJ was not required to consider Dr. Byerly's 2007 opinion that Plaintiff was "permanently disabled" because disability is an issue reserved for the Commissioner under the SSA regulations, and Dr. Byerly does not reference her own treatment notes or any other medical records to support her opinion. *See* 20 C.F.R. § 416.927(d); SSR 96-5p. The Commissioner also argues that, in spite of the December 2006 test results, the medical evidence demonstrated Plaintiff's significant improvement shortly following these tests in that by the time of his discharge from the hospital, he was ambulating with a cane and described as stable and three months later, Plaintiff was able to walk slowly without a cane. R. 329. The Commissioner also points out that most of Plaintiff's examinations between October 2007 and April 2010 reported normal physical functional results (except for hypertension or abdominal pain). *See* R. 355, 399-400, 403. Record from the Florida Department of Health between October 2007 and April 2010 mostly note the

-12-

visits were for cold/flu symptoms or lab results and normal physical examinations. R. 375-78, 420-21, 436-37, 451-52.

In addition to Dr. Singh's consultative examination and opinion regarding Plaintiff's functional limitations in conflict with Dr. Byerly's opinion, the ALJ also specifically noted that Dr. Byerly's opinion was not supported by Plaintiff's own activities:

> In sum, the above residual functional capacity assessment is supported by the evidence of record, medical findings, the opinions of the examining physicians, the claimant's level of activity, and the claimant's testimony at the hearing. The claimant stated in March 2008 that he no longer uses a cane to ambulate, Exhibit 8E. Furthermore, the claimant testified that he lives with his mother who is diabetic and blind. He provides care for her including meals and checking her blood sugar levels. The claimant cooks and does shopping, Exhibit 8E. In addition, he stated that he recently acquired a puppy, which he also takes care of.  Therefore, I find the evidence contained in the record does not support the claimant's allegations of symptoms so severe as to preclude performance of any work since his alleged onset date. I conclude that claimant's subjective complaints and alleged limitations are not persuasive and the claimant retains the ability, despite his impairments, to perform work activities with the limitations set forth above. This capacity is consistent with and supported by the observations of treating sources in the medical records, the findings of consultants, and the claimant's own statements about his activities and abilities.

R. 73. Plaintiff reported to SSA staff in March 2008 that he stopped using his cane three months before, he was able to prepare a simple meal, shop for groceries as needed, manage personal care with minimal assistance, recall information and dates, and walk short distances. R. 215. At the hearing, Plaintiff testified that he could lift about ten pounds with his left arm and that he could walk to a store about 200 yards from his home twice a day. R. 33, 38.  He testified that he did not have any problems sitting and he takes care of his new puppy, and his blind, diabetic mother, checking her blood sugar, bringing her medication, and warming her meals, and.  R. 38-39, 41, 46.  Other medical treatment notes show he reported to the Florida Hospital Emergency Room in January 2008 that he had strength enough to attempt to move a couch in that he reported he "pulled [his] chest moving a couch" R. 408.

The ALJ properly considered Dr. Byerly's own treatment notes and the other medical evidence of record as well as Plaintiff's reported activities in giving Dr. Byerly's opinion limited weight. Accordingly, the ALJ's decision was based on substantial evidence.

## IV.   CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 6, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record